UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| MELANIE DAVIS,<br><br>*Plaintiff*,<br><br>v.<br><br>MUTUAL INVESTORS, INC.,<br><br>*Defendant*. | Case No. _____<br><br><br>**COMPLAINT**<br><br>**Injunctive Relief Sought** |

Plaintiff Melanie Davis, by and through the undersigned counsel, brings this action against Mutual Investors, Inc., a Nebraska business corporation, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this civil rights action against Defendant for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities. Defendant has failed to remove architectural barriers in the multi-tenant commercial building complex known as "Bel Air Plaza", even though such removal is readily achievable.

2. The violations alleged in this complaint occurred at "Bel Air Plaza", located at 12000 West Center Road, Omaha NE 68144.

3. Defendant's failure to provide equal access to "Bel Air Plaza" violates the mandates of the ADA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

4. Defendant's conduct constitutes an ongoing and continuous violation of the law.

5. Accordingly, Plaintiff seeks a declaration that Defendant's facilities violate federal and an injunction requiring Defendant to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiff further requests that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendant continues to comply with the relevant requirements of the ADA.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

7. Venue in this judicial district is proper because Defendant is located and transacts business within this judicial district and has sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

8. Plaintiff Melanie Davis is a resident of Omaha, Nebraska. Plaintiff Davis grew up in Omaha, Nebraska and lived there until she moved to Minnesota in 2005. While living in Minnesota, she visited Omaha many times, including five visits in 2016-2017. She moved back to Omaha in 2017, where she now resides.

9. Plaintiff Melanie Davis suffers from, and all times relevant hereto has suffered from, Cerebral Palsy, a condition that substantially limits her ability to walk and

stand, and is therefore a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq.*, and under the MHRA. As a person with a disability, Plaintiff Davis has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

10. Defendant Mutual Investors, Inc., a Nebraska business corporation, is the owner and lessor of the real property and improvements which are the subject of this action, the multi-tenant commercial building complex known as "Bel Air Plaza", a place of public accommodation within the meaning of the ADA, located at the street address of 12000 West Center Road, Omaha NE 68144.

## FACTUAL BACKGROUND

11. On July 29, 2017, Plaintiff Davis attempted to patronize the multi-tenant commercial building complex known as "Bel Air Plaza" in Omaha, Nebraska. Bel Air Plaza had dozens of tenant businesses in several buildings. Plaintiff was traveling with her boyfriend, who also uses a wheelchair for mobility.

12. When Plaintiff and her boyfriend drove to "Bel Air Plaza" she found approximately 935 total parking spaces in the customer parking lot and 14 parking spaces reserved for persons with disabilities. Plaintiff shops at tenant businesses of "Bel Air Plaza," including Posh Peacock Consignment Gallery.

13. 1 parking space reserved for persons with disabilities was located near the tenant business, Connect Hearing.

14. This reserved parking space was located near a curb ramp providing access to the nearby building. This curb ramp was steep and had no level landing at the top of the ramp.

15. The building housing the tenant business Lee Douglas Interiors had no accessible route between the customer parking lot and the tenancy front entrance and had no nearby accessible parking space due to the lack of a curb ramp.

16. 1 parking space reserved for persons with disabilities was located near the tenant business, Vic's Corn Popper.

17. This parking space had slopes in its adjacent access aisle. The sign reserving this parking space was situated approximately 4 feet above the ground.

18. 1 parking space reserved for persons with disabilities was located near Horizon Dental Center, on the opposite side of the same building as Vic's Corn Popper.

19. This parking space and its adjacent access aisle both had slopes making them difficult to navigate in a wheelchair.

20. The sign reserving this parking space was situated approximately 4 feet above the parking space.

21. The curb ramp providing access to the building from this reserved parking space had no landing at the top of the ramp, forcing Plaintiff to turn while on the slope of the ramp.

22. The area of the parking lot near the building and tenancy occupied by Saigon Restaurant had 1 parking space reserved for persons with disabilities.

23. This parking space was reserved by a sign situated approximately 4 feet above the ground.

24. This parking space and its adjacent access aisle had a depression that accumulated water.

25. 1 parking space reserved for persons with disabilities was located near the tenant business, Bel Air Animal Hospital.

26. This parking space was reserved by a sign approximately 4 feet above the surface of the parking space.

27. Both the parking space and its adjacent access aisle had noticeable slopes.

28. The sign reserving this parking space was situated approximately 4 feet above the ground.

29. The curb ramp providing access to the Bel Air Animal Hospital entrance from the reserved parking space had a steep slope.

30. 1 parking space reserved for persons with disabilities was located near the tenant business, My Tailor.

31. This reserved parking space had an adjacent access aisle that did not extend the full length of the reserved parking space.

32. The sign reserving this parking space was situated approximately 4 feet above the surface of the parking space.

33. 1 parking space reserved for persons with disabilities was located near Omaha National Title.

34. This parking space had defects in the asphalt that could impact Plaintiff's ability to get around her vehicle.

35. The curb ramp near this reserved parking space was steep.

36. A vacant building in "Bel Air Plaza" had 6 parking spaces reserved for persons with disabilities.

37. 4 of these parking spaces were not reserved through posted signage.

38. 1 parking space near the Wine 121 was reserved for persons with disabilities.

39. This parking space was reserved with a sign approximately 3 feet above the surface of the parking space.

40. Plaintiff found 0 parking spaces marked as accessible van parking spaces.

41.     Images in Exhibit A to this Complaint depict the parking spaces reserved for persons with disabilities in the "Bel Air Plaza" customer parking lot.

42.     In light of the architectural barriers at "Bel Air Plaza", Plaintiff is deterred from visiting "Bel Air Plaza" in the future. Plaintiff intends to return to "Bel Air Plaza" to patronize the facility and its tenant businesses, but these architectural barriers deter her from doing so. She plans to return and patronize "Bel Air Plaza" when she learns that the premises have been made fully accessible to persons who use wheelchairs for mobility.

43.     Plaintiff Davis attempted to access Defendant's premises, but could not do so independently on a full and equal basis because of her disabilities, due to the physical barriers to access and violations of the ADA that exist at Defendant's premises. As a result of Defendant's non-compliance with the ADA, Plaintiff Davis cannot independently access the facilities and/or is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

44.     On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

    a. Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

    b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

   c. Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

   d. Individuals with disabilities continually encounter various forms of discrimination; and

   e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

45. Congress explicitly stated that the purpose of the ADA was to:

   a. Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

   b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

   c. Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

46. Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply

with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

47. The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

48. Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

49. In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

50. In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

51. The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

52. On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

53. On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

54. The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

55. Defendant has discriminated against Plaintiff on the basis of her disabilities by failing to comply with the requirements of the ADA and the ADAAG with regard to "Bel Air Plaza". A specific, though not exclusive, list of unlawful physical barriers and ADA violations present at "Bel Air Plaza" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

   a. "Bel Air Plaza" had approximately 935 total parking spaces and was required to have 19 accessible parking spaces, but "Bel Air Plaza had only 14 parking spaces reserved for persons with disabilities, and only 2 of these reserved parking spaces complied with ADAAG 502 and were on accessible routes, in violation of ADAAG 208.2. Plaintiff uses a wheelchair for mobility and requires an accessible parking space to make a safe transfer between her vehicle and wheelchair and travel between the parking lot and building entrance.

b. Several reserved parking spaces were reserved with signage posted lower than 60 inches above the surface of the parking space or lacked posted signage altogether, in violation of ADAAG 216.5 and 502.6. Low or missing signage makes it difficult for Plaintiff to find accessible parking, creates the chance of someone inadvertently parking in accessible parking spaces, and hinders the ability of law enforcement to enforce parking rules and regulations.

c. Several reserved parking spaces had slopes steeper than 1:48 in the parking space or adjacent access aisle, in violation of ADAAG 502.4. Plaintiff requires a level parking space and access aisle to make a safe transfer between her vehicle and the parking lot.

d. 1 reserved parking space did not extend the full length of the adjacent reserved parking space, in violation of ADAAG 502.3.2. Plaintiff requires a full access aisle to safely use an accessible parking space.

e. 1 accessible parking space had a broken surface that effectively had changes in level, in violation of ADAAG 502.4. Plaintiff requires a uniform, level surface to use an accessible parking space.

f. Several ramps providing access between reserved parking spaces and tenancy entrances were steeper than 1:12, in violation of ADAAG 405.2. Steep ramps make it difficult for Plaintiff to ascend ramps and make it difficult for Plaintiff to safely descend ramps.

g. 2 curb ramps had no landing at the top of the ramp, in violation of ADAAG 406.4. Plaintiff requires a level landing at the top of a ramp to travel safely on accessible route.

    h. 1 tenancy of "Bel Air Plaza" lacked a curb ramp connecting the customer parking lot to its main entrance, in violation of ADAAG 206.2.1, 402.2. Plaintiff uses a wheelchair for mobility and cannot climb a curb.

    i. 0 parking spaces were reserved as van parking spaces complying with ADAAG 502, rather than the required 4, in violation of ADAAG 208.2.4.

    j. Many of the accessible parking spaces were clustered around a vacant building rather than active tenant businesses, whereas some tenant businesses had 0 nearby accessible parking spaces, in violation of ADAAG 208.3.1. Shorter routes are easier and safer for Plaintiff to travel, especially over a large complex like "Bel Air Plaza".

56. The above listing is not to be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiff or which exist at "Bel Air Plaza". To qualify as an accessible parking structure, and for a parking space to qualify an accessible parking space, the space must be located on an accessible route, the route must be the shortest accessible route, the space must be marked by appropriate signage, the space must be flanked by an access aisle, and the space and access aisle must comply with sloping requirements. ADAAG 206; 208; 216, Chapter 4 including but not limited to 402, 403, 404, 405, and 406; and 502.

57. In order to fully remedy the discriminatory conditions, Plaintiff requires an inspection of "Bel Air Plaza" in order to photograph and measure all such barriers to access and violations of the ADA and the ADAAG.

58. Compliance with the ADA standards and the ADAAG is required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable. Compliance with the ADA standards and the ADAAG is readily achievable by Defendant due to the lack of difficulty and low cost of remedying the above-listed barriers.

Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, creating accessible parking spaces. 28 C.F.R. § 36.304(b).

59.     Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all sizes for costs incurred in removing architectural barriers, up to $15,000. *See* ADA Update: A Primer for Small Business, http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

60.     As a person with a disability, Plaintiff Davis has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

61.     Without injunctive relief, Defendant's failure to remove accessibility barriers will continue to cause injury to Plaintiff, who will continue to be unable to independently access "Bel Air Plaza" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of her rights under the ADA.

## FIRST CAUSE OF ACTION
**Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.***

62.     Plaintiff incorporates and realleges the above paragraphs.

63.     Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services,

> facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

64. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

65. Defendant has discriminated against Plaintiff and others in that it failed to make its place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above. Plaintiff Davis has been denied full and equal access to "Bel Air Plaza" and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

66. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. Defendant's violations of the ADA and ADAAG are ongoing.

67. Defendant has failed to remove architectural barriers to full and equal access by Plaintiff Davis, even though removing the barriers is readily achievable.

68. Plaintiff Davis plans to visit "Bel Air Plaza" again in the near future. Plaintiff is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm upon her planned return visit to "Bel Air Plaza" unless and until Defendant is required to remove the physical barriers to access and ADA violations that exist at Defendant's place of public accommodation, including those set forth specifically herein.

69. This Court has authority under 42 U.S.C. § 12188 to grant Plaintiff injunctive relief, including an order requiring Defendant to make "Bel Air Plaza" readily accessible

to and independently usable by individuals with disabilities to the extent required by the ADA and ADAAG, and/or to close "Bel Air Plaza" until such time as Defendant cures the access barriers.

70. Plaintiff has retained the undersigned counsel for the filing and prosecution of this action, and is entitled to recover reasonable attorneys' fees, litigation expenses and costs from Defendant, pursuant to 42 U.S.C. §§ 12205, 12117, and 28 C.F.R. § 36.505.

**WHEREFORE**, Plaintiff respectfully requests:

a. Plaintiff demands a trial in Omaha, Nebraska.

b. That the Court issue a Declaratory Judgment that determines that Defendant's facilities, at the commencement of the instant suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and the relevant implementing regulations including the ADAAG.

c. That the Court issue a permanent injunction, pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defendant from continuing its discriminatory practices; including an order directing Defendant to make all readily achievable alterations to its facilities so as to remove physical barriers to access and make its facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA; and also including an order requiring Defendant to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

    d. That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, or as otherwise provided by law; and

    e. That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

DATED: <u>November 21, 2017</u>

<u>/s/ Padraigin L. Browne</u>
Padraigin L. Browne (MN Bar # 389962)
Browne Law LLC
8530 Eagle Point Blvd Suite #100
Lake Elmo, MN 55042
E-mail: paddy@brownelawllc.com
Phone: (612) 293-4805
